VIRGINIA TOMASEK *et al.,* Plaintiffs-Appellants, *v.* THE CITY OF DES PLAINES, Defendant-Appellee.—(ROY H. MICHALSON *et al.,* Defendants-Intervenors-Appellees.)

(No. 58083;

First District (4th Division)—February 13, 1975.

*Rehearing denied April 2, 1975.*

BURMAN, J., dissenting.

Dowd, Dowd and Dowd, of Chicago (James J. Dowd and Phillip J. McGuire, of counsel), for appellants.

Robert J. Di Leonardi, of Des Plaines, for appellee.

Leonard Bosgraf, of Chicago, for intervenors-appellees.

Mr. PRESIDING JUSTICE DIERINGER delivered the opinion of the court:

The plaintiffs, Virginia Tomasek, John Rogers, and Wm. L. Kunkel & Co., brought this declaratory judgment action in the Circuit Court of Cook County against the City of Des Plaines, a municipal corporation.

Twelve persons who own seven parcels of land near the subject property were given leave to intervene as parties defendant. The plaintiffs sought to have the zoning ordinance of the City of Des Plaines declared invalid insofar as it classifies their properties as R-2 single-family residential. The trial court entered judgment for the defendants.

The issue presented for review is whether the judgment of the trial court was contrary to the manifest weight of the evidence.

The plaintiffs, owners of three pieces of property in the City of Des Plaines in Cook County, all seek to have their property zoned as C-2 commercial. The subject properties are located in a strip of land between Busse Highway and the Chicago and North Western Railroad's three-track line serving Chicago's northwest suburbs. Busse Highway is a four-lane road connecting Des Plaines and Park Ridge, and at the point in question is separated from the railroad right-of-way by 140 to 150 feet. The Tomasek property (1.7284 acres) is closest to downtown Des Plaines and is adjoined by the Rogers property (2.0046 acres), which is improved with the owner's single-family residence. An irregularly shaped plot of .7691 acres, not involved on this appeal, separates the Rogers property from the Kunkel property (2.555 acres).

The three properties have a frontage of 2242.72 feet along Busse Highway and rear boundaries of 2382.95 feet along the railroad right-of-way. At the southeastern end, the Kunkel property narrows and comes to a point as Busse Highway curves to adjoin the railroad right-of-way.

The strip of land between the highway and the railroad tracks to the northwest of the subject properties is zoned M-2 general manufacturing and contains such uses as a machine shop, a millwork shop, two engineering offices and an automobile dealership.

The north side of Busse Highway across from the Tomasek and Rogers parcels is zoned R-2. The portion opposite the northern and central sections of the Kunkel parcel is zoned R-1, and it is in this area that the intervenors reside. Across from the easterly end of the Kunkel property is a forest preserve.

Across the railroad tracks to the south of the adjoining M-2 district and a small portion of the northern end of the Tomasek property is a forest preserve. This is adjoined by the Methodist Campgrounds and Summer Assembly, which extends past the northern end of the Kunkel property. The area to the southeast of this is used by the City of Des Plaines as a public-works maintenance garage, and to the southeast of that is additional forest preserve.

Virginia Tomasek testified that she is the owner of a wholesale tobacco company located in Des Plaines, and she has owned the subject property since 1959. In 1962 she tried to rezone the property and in 1964 listed

the property with a broker for sale as single-family, but got no offers in 2 or 3 years.

Rogers testified that he lives in the only house on the subject property which he bought in 1954. At that time there were three single-family homes across the railroad tracks, which have been torn down by the City in order to erect a garage to store heavy machinery. He purchased the property for $27,500 and tried unsuccessfully to sell it 10 years later for $50,000.

Ralph H. Martin testified he is a vice-president of Wm. L. Kunkel & Co., which owns the third parcel of land. He stated the company has not attempted to develop the property for residential use because the character of the property has changed with the development of the city garage across the tracks and because it backs up to the railroad tracks.

The plaintiffs introduced into evidence an exhibit showing 12 one-story buildings of the kind they proposed to construct, but there were no detailed plans presented.

William S. Lawrence, M. Edward Smith, and William A. McCann testified as expert witnesses for the plaintiffs. Lawrence, a city planning and zoning consultant since 1947, testified that, in his opinion, the highest and best use of the subject property would be office, wholesaler, or jobber facilities, as allowed by C-2 zoning, uses which would attract very little of the public. The factors he considered in arriving at his opinion were the commercial and manufacturing uses west of the subject property, the North Western Railroad which carries 70 commuter trains and 7 or 8 freight movements each day. The property is closely related to the central area of Des Plaines and would provide wholesale and office facilities to complement the downtown retail area. He also found that Busse Highway, a four-lane, hundred-foot wide road, constituted a reasonable boundary for a change in zoning between the residential uses to the north.

M. Edward Smith testified that he is a realtor, appraiser, and developer with an office in Arlington Heights. He stated the highest and best use of the property would be a commercial use of offices or wholesale buildings. In reaching his conclusion, he took into consideration the fact that the subject property is the only piece of property along the entire length of Busse Road which has not been developed in either commercial or industrial use. He stated that if the property was satisfactory for single-family use, it would already have been purchased and used in that manner because of the strong demand for single-family property in Des Plaines. He stated he had done an economic study as to the value of the property for single-family use, and he estimated the

value at $90,000. If it were zoned as C-2 commercial, the value would be approximately $248,000.

William A. McCann testified he is a licensed real estate broker, primarily engaged in the profession of real estate appraising and consulting. In his opinion the property as presently zoned would have a value in the range of $100,000 and if rezoned would have a value in the range of $250,000. In his opinion the highest and best use would be in accordance with the C-2 zoning classification.

The defendant presented two expert witnesses, Arthur Sheridan and Gerwin Rourbach. Sheridan testified he is a real estate developer, licensed broker and appraiser and consultant in zoning. He constructed the automobile service center at the intersection of Busse and Miner, which is less than a quarter of a mile from the subject property. In his opinion the essential character of the area is single-family residence, and that is the highest and best use of the site. He concluded that the railroad embankments buffered the area from any influence from the south, and that the traffic along Busse Highway is minimal. Willard Blume, the Police Captain of the City of Des Plaines, had testified that a traffic count on Busse Highway showed approximately 4200 cars per day, which he characterized as comparable to that of a normal residential side street.

Sheridan also testified as to the values of the properties north of Busse Highway. He stated that the homes in the R-2 area were valued at between $25,000 and $35,000, and in the R-1 area at $70,000 to $130,000. In his opinion, if the zoning were changed to commercial use the properties in the R-1 area would depreciate by approximately 20%, and the homes in the R-2 area would depreciate by 5 to 10%. He also testified the fair market value of the property as zoned for single-family purposes is approximately $200,000, and if zoned commercially would be worth $210,000 to $225,000. He stated that the property lacked the amenities to be used successfully as a warehouse and office area.

Gerwin Rourbach, an independent consultant and planner, testified the subject property should remain as it is to reflect what already exists in the area in terms of the basic low-density open-space character of the single-family zoning and the nearby forest preserves and park land.

The 1958 Des Plaines comprehensive plan and the proposed 1971 plan both show the subject property as single-family zoning.

Several intervenors testified they relied on the present zoning when purchasing their homes along the north side of Busse Highway.

■■ The plaintiffs argue that under the applicable law set forth in *La Salle National Bank v. County of Cook* (1957), 12 Ill.2d 40, they have shown by clear and convincing evidence that their property is im-

properly zoned, and the judgment of the trial court must be reversed and remanded with directions to zone the property as C-2 commercial. In that case the court held that in determining the validity of an ordinance it is necessary to consider the following standards: (1) The existing uses and zoning of nearby property; (2) the extent to which property values are diminished by the particular zoning restrictions; (3) the extent to which the destruction of property values of plaintiffs promotes the health, safety, morals or general welfare of the public; (4) the relative gain to the public as compared to the hardship imposed upon the individual property owner; (5) the suitability of the subject property for the zoned purposes; and (6) the length of time the property has been vacant as zoned considered in the context of land development in the area in the vicinity of the subject property.

■■■ In evaluating these standards it is important to note that a zoning ordinance is presumed valid and the party contesting its validity must show by clear and convincing evidence that it is invalid. (*Reese v. Village of Mount Prospect* (1966), 72 Ill.App.2d 418; *Exchange National Bank v. County of Cook* (1962), 25 Ill.2d 434.) The plaintiffs must also show that the proposed zoning is reasonable by a preponderance of the evidence (*Mangel & Co v. Village of Wilmette* (1969), 115 Ill.App.2d 383), and that the City's refusal to rezone to commercial was arbitrary and unreasonable. *Schultz v. Village of Lisle* (1972), 53 Ill.2d 39.

In the instant case the record reveals that the subject property is the only property along the entire length of the south side of Busse Highway that is zoned for single-family residences. All other property between the highway and the tracks was zoned for commercial or industrial purposes. The adjacent northwestern half of the "peninsula" between the highway and the tracks was zoned M-2 general manufacturing and is developed with an automobile dealership, engineering offices, a millwork shop, and a machine shop.

Several experts testified with respect to the extent the present single-family zoning diminishes the value of the plaintiffs' property. The plaintiffs' experts placed the value of the loss at approximately $150,000. Arthur Sheridan, the defendants' expert, estimated the value of the property under the present zoning at $200,000, and at $210,000 to $225,000 if rezoned. However, when asked why the property has remained vacant in the midst of a build-boom, his only explanation was that developers sometimes fail to see the possibilities of properties. It is significant to note he did not express much interest in the property himself when asked if he would buy the property for $200,000, even when improved with utilities. In the case of *Chicago & N. W. Ry. Co. v. City of Des Plaines* (1968), 97 Ill.App.2d 201, the court took significant

note that the contractor who had developed an adjoining residential area testified he was willing to purchase the property for single-family development at a price higher than the value if industrial zoning had been granted.

■■ The intervenors contend the proposed zoning would have the affect of depreciating the value of their homes by 20 to 25%, but the property is shaped in such a way that the only alternative would be a string of perhaps some 30 homes facing Busse Highway. Such a use under the present zoning would appear to have a similar depreciating affect. There is no gain to the public under the present zoning other than to provide the intervenors with an attractive view. It is well established that the use of property cannot be restricted or limited merely because neighboring property owners so desire, or because they think it might protect the value of their residences. *Regner v. County of McHenry* (1956), 9 Ill.2d 577; *Oak Park National Bank v. City of Chicago* (1973), 10 Ill.App.3d 258.

The proposed change would not impose greater burdens on the City's services than would single-family development of the property. The cars which would enter and leave a commercial use would cause no greater problem than those which might enter and leave as many as thirty driveways under single-family development. It is also important to note that a change could not open the door to further changes because the surrounding area is completely built up or contains public uses.

The suitability of the property for the zoned purposes is best looked at in terms of the length of time the property has remained vacant as zoned. The Des Plaines area has experienced a strong demand for single-family residences, yet this property has remained undeveloped.

Although the defendants maintain that Busse Highway is a suitable road on which to build single-family homes because of its low traffic volume, the Des Plaines comprehensive plan classifies it as a major arterial street and anticipates higher traffic volume in the future.

■■ The law does not require plaintiffs to prove their property is totally unsuitable for single-family purposes. It is sufficient that they suffer a substantial decrease in value from a classification that bears no substantial relation to the public welfare. *La Salle National Bank of Chicago v. County of Cook* (1957), 12 Ill.2d 40; *Glassey v. County of Tazewell* (1973), 11 Ill.App.3d 1087.

The defendants argue that the valuation of the property under a different zoning is not controlling, and that even a disparity of $150,000 between the value of the land as now zoned compared to its value if office and warehouse buildings are allowed does not render the zoning classification invalid. (*Kioutas v. City of Chicago* (1965), 59 Ill.App.2d

441; *Reskin v. City of Northlake* (1965), 55 Ill.App.2d 184; *Chicago & N. W. Ry. Co. v. City of Des Plaines* (1968), 97 Ill.App.2d 201.) They also argue that the mere location of property along a heavily traveled street or railroad tracks does not render a single-family classification invalid. *Jans v. City of Evanston* (1964), 52 Ill.App.2d 61; *Reskin v. City of Northlake* (1965), 55 Ill.App.2d 184; *Chicago & N.W. Ry. Co. v. City of Des Plaines* (1968), 97 Ill.App.2d 201.

■■■ However, there are no cases cited where all these factors are present. While a mere difference of opinion as to the proper zoning of property requires that the legislative judgment be upheld and the zoning declared valid (*La Salle National Bank v. Village of Lombard* (1965), 64 Ill.App.2d 211), the existence of conflict in testimony does not create an irrebuttable presumption that the ordinance is valid. *Bass v. City of Joliet* (1973), 10 Ill.App.3d 860.

■■ We believe all of the factors when taken together indicate by the manifest weight of the evidence that the subject property is inappropriate for single-family development and that the C-2 commercial zoning requested is reasonable.

The defendants next contend the plaintiffs' plans for office and warehouse buildings are so broad and the certainty of development so vague that the judgment order has the effect of speculative rezoning. They state that reference in a decree to broad uses is improper and detailed plans and specifications of a proposed use should be approved. In the case of *Murphy v. City of Countryside* (1969), 115 Ill.App.2d 301, the plaintiffs failed to show a specific proposed use, except to state the property was used for multiple-family residences. Also, see *Garshva v. City of Rockford* (1969), 106 Ill.App.2d 484 (abstract opinion).

On this authority the defendants contend the plaintiffs in the instant case have failed to prove a specific use for the property and cannot prevail.

■■ It can be seen in this case the plaintiffs have introduced specific site plans showing the general design and layout of the buildings they propose to construct. We believe this is sufficient for them to meet their burden. *Bass v. City of Joliet* (1973), 10 Ill.App.3d 860.

The defendants finally suggest the plaintiffs did not exhaust their administrative remedies as required in the case of *Bright v. City of Evanston* (1956), 10 Ill.2d 178. When the plaintiffs originally applied for rezoning, the parcel for which rezoning was requested was made up of four contiguous pieces of land, and was so described in the complaint filed in the Circuit Court. After suit was filed, plaintiffs made a motion to dismiss Pioneer Trust and Savings Bank as one of the plaintiffs, and an order was entered dismissing the bank. An amended complaint was

filed in which the property owned by the bank was excluded, thus accounting for the three-fourths acre separating the Rogers property from the Kunkel property.

The defendants argue that the plaintiffs presented to the court not one contiguous parcel of land as presented to the City when they requested its rezoning, but two separate parcels for which new and different considerations were applicable. It is their position that the request with respect to the two separate parcels was never before any administrative body of the City, and the City of Des Plaines was never given an opportunity to consider such a request. Therefore, plaintiffs have failed to exhaust their administrative remedies as required by the *Bright* case and had no standing to seek relief in the trial court.

■■■ We believe this argument has no merit in this case. In *Bass v. City of Joliet* (1973), 10 Ill.App.3d 860, 865-66, the court stated:

"The rule of exhaustion of administrative remedies, unique to zoning cases, is no more than an expression of judicial policy which recognizes that zoning is primarily an administrative function, and is aimed at affording local authorities an opportunity to correct errors and settle disputes before there is judicial intervention. It is not jurisdictional, however, nor is it unreasonably employed, and to prevent needless delay, increase of costs and circuitry of action. It is not applied where the demonstrated attitude of the local authorities makes it clear that administrative relief, or further efforts to obtain it, will not be forthcoming."

■■■ It is clear in this case the City of Des Plaines has made its opposition to the rezoning apparent, and no purpose would be served by requiring further administrative action.

For these reasons the judgment of the Circuit Court of Cook County is reversed and remanded, and the circuit court is ordered to grant the relief sought by the plaintiffs.

Reversed and remanded with directions.

ADESKO, J., concurs.

BURMAN, J., dissenting.

I am unable to agree with the majority of the court. It has been repeatedly recognized that zoning is primarily a legislative function, subject to court review only for the purpose of determining whether the power, as exercised, involves an undue invasion of private constitutional rights without a reasonable justification in relation to the public welfare. (*La Salle National Bank v. City of Evanston*, 57 Ill.2d 415, 428, 312 N.E.2d 625, 632.) It is therefore always presumed, in an attack

upon a zoning ordinance, that the enactment is valid, and the burden of proving its invalidity falls upon the one who attacks the ordinance. (*Jacobson v. City of Evanston,* 10 Ill.2d 61, 139 N.E.2d 205.) The burden of proof required is one of clear and convincing evidence that the ordinance is arbitrary and unreasonable and has no substantial relation to the public health, safety and welfare. *Bennett v. City of Chicago,* 24 Ill.2d 270, 181 N.E.2d 96.

The property at question in the instant case had been zoned for single-family residential uses pursuant to a comprehensive plan adopted by the City of Des Plaines (hereinafter referred to as the "City") in 1958. The proposed 1971 comprehensive plan also classifies the property as single-family residential. The plaintiffs applied to the Zoning Board of Appeals of the City of Des Plaines for reclassification of their properties from "R-2 Single Family Residence District" to "C-2 Commercial District." After a hearing, the Board recommended to the City that the request be denied. The City concurred in the Zoning Board's decision. Considered legislative and administrative determinations were thereupon in conformity regarding the propriety of the present zoning.

An action was then commenced in the circuit court by four plaintiffs seeking a declaratory judgment that the property be rezoned to C-2 commercial. A number of owners of single-family residences located directly across Busse Highway north of the subject property requested and were given leave to intervene. Thereafter, one of the plaintiffs requested leave to withdraw and was dismissed from the suit, leaving an irregularly shaped plot in the middle of the subject property no longer a part of this appeal. The case went to trial and many witnesses were presented by the respective parties, including expert witnesses. After hearing the evidence the court entered judgment against the plaintiffs.

Now, on appeal, in order to reverse that judgment we must not only be convinced that the plaintiffs established the invalidity of the ordinance as applied to them by clear and convincing evidence, thus overcoming the presumption in favor of the legislative determination (*Bennett v. City of Chicago,* 24 Ill.2d 270, 181 N.E.2d 96), but also that the trial court's adverse finding in this regard was manifestly against the weight of the evidence (*Atkins v. County of Cook,* 18 Ill.2d 287, 163 N.E.2d 826).

In my view, the most that can be said of the plaintiffs' case is that they have demonstrated that there is a difference of opinion between them and the City and the intervenors as to whether their property should be rezoned. And where there is room for a legitimate difference of opinion concerning the reasonableness of a classification, the finding

of the legislative body must be conclusive and remain undisturbed. (*La Salle National Bank v. City of Evanston,* 57 Ill.2d 415, 312 N.E.2d 625.) As stated in *Chicago & N.W. Ry. Co. v. City of Des Plaines,* 97 Ill. App.2d 201, 210, 240 N.E.2d 280, 285, "[w]here the reasonableness of a zoning classification is debatable, as these different views of the evidence indicate the present one to be, the legislative judgment of the City Council must control." That statement applies equally to the case at bar.

Plaintiff, Virginia Tomasek, the owner of the northwesternmost parcel of the subject property, testified that she was also the owner of a wholesale tobacco-distributor company located in another area in the City of Des Plaines, and she finds it necessary to move her business elsewhere. She desires to move the business to her portion of the subject property if the zoning change is effected. Tobacco and tobacco products, including packaged cigarettes, cigars and pipe tobacco, are kept on the business premises. There are truck deliveries to and from her premises, and on an average day there are 12 to 15 deliveries. The company owns six trucks and is also involved in the vending machine business. She has owned the subject property since 1959, at which time it was zoned for single-family residences, and the property across Busse Highway had already been developed with single-family residences. She testified that she would relocate her business into two or three of the four buildings she plans to have erected on the subject parcel if the zoning is changed, and perhaps she would rent out some of the unused space. The property at present is heavily wooded. Plaintiff John H. Rogers acquired his property, adjoining the Tomasek property, in 1954. At the time of trial he lived with his family on the site, which is improved with a single-family dwelling. He testified that if his parcel would be rezoned he would build four office buildings there. Plaintiff William L. Kunkel & Company, the owner of the wooded and undeveloped southeasternmost parcel (which is separated from the Tomasek and Rogers parcels by the plot owned by the plaintiff who was granted leave to withdraw before trial),[1] also plans to develop its property with four office buildings upon reclassification.

The City's experts were of the opinion that the highest and best use of the subject property would be for single-family residences in accor-

---

[1] The map appended apparently mislocates this irregularly shaped parcel, owned by the dismissed plaintiff, and therefore not comprising a part of the subject property. It should appear farther to the southeast thus making the contiguous Tomasek and Rogers parcels appear considerably larger, and the separated Kunkel parcel considerably smaller.

dance with the present zoning, and their testimony indicated that it is reasonably adapted for the present zone-use classification. It could be developed with 28 to 30 single-family homes. The plaintiffs' experts did not directly dispute that the property could be developed as single family, but were of the opinion that the highest and best use of the land would be for office, wholesale, or jobber facilities as allowed by C-2 zoning.

An important factor influencing the opinion of the plaintiffs' experts, and relied on in the majority opinion, is the nonresidential use near the subject property. The majority points out that the subject property is the only property along the entire length of the south side of Busse Highway that is zoned for single-family residences, and that the adjacent northwestern half of the "peninsula" between the highway and the railroad tracks was zoned and developed as M-2 general manufacturing. But the City persuasively, I think, showed that the essential character of the area is single-family residential and that this use influences the subject property most. As the land use and zoning map appended to this dissent indicates, the present R-2 zoning of the subject property is entirely consistent with the residential zoning and development across Busse Highway to the north which includes a City park, and the forest preserve land to the north and east. The subject strip can genuinely be considered much more a part of this basic single-family park neighborhood to the north, rather than a part of the manufacturing district bordering only the northwesternmost edge of the subject property. These manufacturing uses are located a considerable distance away from the bulk of the subject property because of its long narrow shape. As the map indicates, the M-2 zoning ends at roughly the same point on the western boundary of both the property north of the highway (which is then zoned R-2, and farther east R-1), and the subject property—south of the highway up to the commuter line tracks. Thus, no commercial or manufacturing uses are located along any portion of Busse Highway immediately opposite the subject site. The finger-like extension of C-2 zoning along the strip north of the commuter line, which would be created if the subject property were rezoned, was cogently characterized as undesirable.

The effect of the highway on the affinity between the subject property and the residential district to the north was sufficiently demonstrated to be minimal. It was not seriously disputed that Busse Highway is not a major traffic artery. Captain Blume of the Des Plaines Police Department testified as to a traffic count on Busse taken by the City and said that Busse is like a normal residential street in Des Plaines. The plaintiffs'

own expert witness, Smith, agreed that "all it [Busse] is" is a "relatively short highway or road," connecting up Des Plaines with Park Ridge and it "leads nowhere in terms of cut-offs north or south from it." The Tri-State Tollway, which intersects Busse east of the subject property, has no interchange with Busse Highway.

The existing uses and zoning of the neighboring property to the south of the subject property were also demonstrated to have no influence that would compel a finding that the present residential zoning of the subject tract is unreasonable. As the map shows, the subject strip is bordered on the south by railroad tracks belonging to the Chicago and Northwestern line. The property south and southwest of the tracks consists of forest preserve and camp grounds—uses consistent with residential zoning—except for the City of Des Plaines Public Works maintenance garage opposite a portion of the subject property and a small section of the forest preserve which appears on the map as being zoned C-2 but apparently remains undeveloped. Any adverse influence the operation of the maintenance garage would have on abutting residential property is obviated, since the garage does not "abut" the subject property but is separated by the railroad tracks. And the railroad presents a logical line of demarcation between the residential use of the subject property and any commercial use to the south. (See *Urann v. Village of Hinsdale*, 30 Ill.2d 170, 195 N.E.2d 643.) Ipso facto, then, any contention that the very presence of the railroad tracks renders the plaintiffs' lots unfit for single-family use is highly debatable. As in *Urann*, the abutting railroad does not necessarily "fix the character of plaintiffs property, or cause its classification to be unreasonable," since it provides a logical boundary between residential and commercial use. (30 Ill.2d 170, 175, 195 N.E.2d 643, 646.) We note also that the railroad here is basically a commuter line, not a freight line.

Although witnesses for the plaintiffs testified to the contrary, it was also credibly and amply demonstrated that the proposed development would have a detrimental effect on the residential property of the intervenors to the north. Six of the intervenors testified at trial. The evidence shows that their homes range in value from approximately $70,000 to $135,000. They are beautifully landscaped, and substantial investments were made when the intervenors purchased or built them in reliance upon the existing single-family zoning. The proposed development of plaintiffs' property involves the construction of 12 commercial buildings across the street from their homes, with the unsuitable attendant commercial activity, including truck traffic. Such a development would, according to expert testimony, depreciate the value of the property across

Busse Highway considerably. The City is apparently in accord by denying the requested reclassification in the first instance.

The plaintiffs stress that, according to their experts, the value of their property would increase 2½ times if the zoning change were allowed. This estimate is not uncontradicted and, even assuming that their property would be worth more if the proposed use was permitted, this would not be sufficient to invalidate the present zoning ordinance in its application to their property. As stated in *Seith v. City of Wheaton*, 89 Ill. App.2d 446, 451, 232 N.E.2d 173, 175:

> "The fact that plaintiffs' property might be worth more if more intensive use were permitted is true in most every case when use of private property is restricted by zoning ordinances."

In conclusion, I reiterate that initially legislative and administrative determinations were rendered in support of the present zoning, thereby raising a presumption of its validity. Judicial relief was then sought, and the trial judge who saw and heard the witnesses and evaluated their credibility made specific findings of fact. Included therein is the finding "[t]hat the Plaintiffs failed to overcome the presumption of validity of the Zoning Ordinance * * * as applied to the subject property * * *, and said Ordinance as applied to the subject property is reasonable and valid and bears a reasonable relationship to the public health, safety, welfare and morals." That finding must be accorded proper weight. Although I recognize that a conflict of opinion testimony in cases of this nature is to be expected, and does not automatically create an irrebutable presumption that the ordinance is valid (*Bass v. City of Joliet*, 10 Ill. App.3d 860, 295 N.E.2d 53), the evidence here, from the standpoint of the plaintiffs, at best establishes in my mind (as it apparently did in the trial judge's) only a legitimate dispute over whether the property should be reclassified, thus requiring the legislative determination to be sustained. (*La Salle National Bank v. City of Evanston*, 57 Ill.2d 415, 312 N.E.2d 625.) At worst, it appears that plaintiffs are engaged in a speculative scheme to pump up the market value of their property, as is contended by the City. In any event, by no stretch of the imagination does it appear that the action taken by the City of Des Plaines is confiscatory nor that the finding of the trial court is manifestly against the weight of the evidence.

# LAND USE AND ZONING IN THE VICINITY OF
## BUSSE HWY. AND MASON LP
## DES PLAINES , ILLINOIS

**EXISTING LAND USE**

| | |
|---|---|
| SINGLE FAMILY | |
| TWO FAMILY | |
| MULTIPLE FAMILY | |
| RETAIL BUSINESS | |
| AUTOMOTIVE ORIENTED | |
| PUBLIC USE | |
| QUASI-PUBLIC USE | |
| FOREST PRESERVE & WOODED AREA | |
| INDUSTRIAL | |
| VACANT | |

**EXISTING ZONING**

| | |
|---|---|
| SINGLE FAMILY RESIDENCE DISTRICT | R-1 |
| SINGLE FAMILY RESIDENCE DISTRICT | R-2 |
| MULTIPLE FAMILY RESIDENCE DISTRICT | R-4 |
| CENTRAL CORE MULTIPLE FAMILY DISTRICT | R-5 |
| COMMERCIAL NEIGHBORHOOD SHOPPING | C-1 |
| COMMERCIAL DISTRICT | C-2 |
| CENTRAL BUSINESS DISTRICT | C-4 |
| MANUFACTURING (GENERAL) | M-2 |

MAY, 1972

PLANNING CONSULTANTS
WM. H. LAWRENCE & ASSOCIATES, INC