GENEVA RESIDENTIAL ASSOCIATION, LTD., *et al.*, Plaintiffs-Appellants, *v.* THE CITY OF GENEVA *et al.*, Defendants-Appellees.

Second District    No. 80-857

Opinion filed September 8, 1981.

David V. Flynn, of Geneva, for appellants.

Stephen M. Cooper and Charles A. Radovich, both of Geneva, for appellees.

Mr. JUSTICE UNVERZAGT delivered the opinion of the court:

The plaintiffs appeal from the judgment of the circuit court of Kane County granting summary judgment in favor of the defendants in a case involving the validity of a city ordinance granting a special use permit for the operation of a restaurant.

In *Geneva Residential Association, Ltd. v. City of Geneva* (1979), 77 Ill. App. 3d 744, this court reversed the trial court's order dismissing counts I and II of the complaint and remanded the cause to the trial court.

Count I alleged that the Geneva Plan Commission had failed to make the finding that the granting of the requested special use permit for the operation of a restaurant would not be injurious to surrounding properties. Count II alleged that the applicant James Pankow failed to adduce evidence in favor of the special use permit sufficient to warrant the plan commission granting such permit. At the original trial the city contended that since the plan commission was only an advisory body, its failure to make certain findings set forth in the city's zoning ordinance pertaining to special permits was not material since the city council by passing the ordinance granting the special use had in effect "cured" the plan commis-

sion's inadequate consideration of the question. In the original case this court did not agree with that contention, holding that the city was bound by its own ordinance to make certain findings before granting a special use permit. The pertinent part of the Geneva Zoning Ordinance reads as follows:

"31.2705. Standards.

No special use shall be recommended by the plan commission unless such commission shall find:

A. That the establishment, maintenance, or operation of the special use will not be detrimental to or endanger the public health, safety, or general welfare;

B. That the special use will not be injurious to the use and enjoyment of other property in the immediate vicinity for the purposes already permitted nor substantially diminish and impair property values within the neighborhood;

C. That the establishment of the special use will not impede the normal and orderly development and improvement of the surrounding property for uses permitted in the district;

D. That the exterior architectural appeal and functional plan of any proposed structure will not be so at variance with either the exterior architectural appeal and functional plan of the structures already constructed or in the course of construction in the immediate neighborhood or the character of the applicable district, as to cause a substantial depreciation in the property values within the neighborhood;

E. That adequate utilities, access roads, drainage and/or necessary facilities have been or are being provided;

F. That adequate measures have been or will be taken to provide ingress and egress so designed as to minimize traffic congestion in the public streets; and

G. That the special use shall, in all other respects, conform to the applicable regulations of the district in which it is located, except as such regulations may, in each instances, be modified by the council pursuant to the recommendations of the plan commission."

On January 10, 1977, the plan commission held a public hearing on the granting of a permit to operate a restaurant on the property owned by James Pankow. The minutes of that meeting reveal that at the beginning of the meeting all of the members of the plan commission were of the opinion, in varying degrees, that the granting of a permit to operate a restaurant at that location might infringe on at least paragraph B of section 31.2705 of the zoning ordinance and possibly would infringe on other paragraphs as well. After further discussion, however, the chairman stated that he felt that it would be appropriate for the commission to

"propose anything to make this use more palatable for anyone at this time, whether the commission or otherwise." Commissioner Ball then proposed certain restrictions on the use and presented them as a motion as follows:

(1) Screening of the building to a height of seven feet—no windows in the public dining room or kitchen area being exposed to abutting residential property.

(2) Securing of garbage area and garbage to be stored in covered containers.

(3) Exterior lighting to be of low intensity and low elevation.

(4) Kitchen exhaust fumes not to be vented toward adjoining residential properties and blower noises to be kept to a minimum.

After further discussion, the motion was amended to add a closing hour of 9:30 on weekdays and 3 p.m. on Sundays and a requirement that the entrance to the restaurant be only through the front door and the service bar door to be used only for emergencies. As amended, the motion was carried by a vote of five of the seven members of the plan commission. The chairman then noted at the conclusion of the meeting that "this is now a recommendation of the plan commission to the council."

It is apparent from the foregoing that while the plan commission recommended to the city council that the special use be allowed, it did not make a finding consonant with paragraph B of section 31.2705 of the Geneva Zoning Ordinance, that the special use permit requested would "not be injurious to the use and enjoyment of other property in the immediate vicinity for the purposes already permitted * * *."

In the first appeal of this case, this court in reinstating two counts of the complaint and remanding for further evidence bearing on these counts said:

"For the reasons stated above, the order of the circuit court dismissing counts I and II of plaintiffs' original complaint is reversed, and the cause is remanded with directions to reinstate these counts of the complaint. On remand, the trial court is directed to permit the introduction of evidence showing substantial, rather than exact, compliance with the procedures required by statute and ordinance. If the court determines that procedural defects exist which result in substantial noncompliance with the governing statutes and ordinances, then the ordinance granting the special use should be declared void. We further point out that procedural errors occurring before the plan commission may be considered insubstantial if cured by the action of the city council; for instance, if the court determines that the plan commission failed to make a required finding, but the evidence shows that the

city council reassessed the record and on its own investigation made the required finding, then the ordinance granting the special use should be upheld." 77 Ill. App. 3d 744, 759.

At the second trial, the city presented to the trial court two sets of affidavits, one by the plan commission, the other by the council members in support of the validity of their decision to grant the special use. The affidavits of the plan commissioners were all executed on September 28, 1977, before the appeal of the first case was heard. The affidavits were identically worded and stated in pertinent part that the members of the plan commission had initially been inclined, on the basis of the evidence presented to them, to question whether the standards set out in section 31.2705 of the zoning ordinance were being met. However, after certain conditions had been attached to the granting of the permit, the commissioners were of the opinion the standards of said section had been met and therefore had recommended approval of the petition for the special use to the city council. These affidavits were not used in the first trial.

The second set of affidavits were by members of the city council and were all executed in May 1980. They were couched in identical language and stated that they as aldermen had "conducted an independent investigation of the proposed special use and were aware, prior to voting for approval, that the proposed use would meet all building and zoning requirements, including the conditions set forth in the special use section of the ordinance, and believed that the proposed special use would not only not be injurious to existing values and uses in the area but that the proposed use would, in fact, increase property values in the area."

It is apparent that the affidavits in question were in response to the language appearing in this court's opinion in the first appeal, to-wit:

"We further point out that procedural errors occurring before the plan commission may be considered insubstantial if cured by the action of the city council; for instance, if the court determines that the plan commission failed to make a required finding, but the evidence shows that the city council reassessed the record and on its own investigation made the required finding, then the ordinance granting the special use should be upheld." 77 Ill. App. 3d 744, 759.

These affidavits were obviously designed to comply with the suggestion in this court's first opinion that "insubstantial" defects in the procedure before the plan commission might be "cured" by the city council reassessing the record and making its own investigation and making the required findings. This the city council evidently felt it had done through the affidavits.

We do not find the affidavits of either the plan commission or the city council to amount to substantial compliance with the requirements of section 31.2705 of the Geneva Zoning Ordinance. These affidavits were

made after the fact and do not represent "findings" made at the time the petition was pending. While the plan commission did end up by "recommending" to the city council that it grant the special use permit, the plan commission obviously did so in deference to the council and not as a result of its own specific findings. The plan commission, while voting to recommend granting the special use, never found that such use would not depreciate the value of properties in the immediate vicinity. While the trial court accepted the affidavits of the members of the city council and the commissioners as substantially complying with the special zoning requirements, we think they fall short of such compliance and are an attempt by the city council to evade the standards set out in the zoning ordinance.

We repeat here the language cited in the first appellate opinion, taken from *Treadway v. City of Rockford* (1962), 24 Ill. 2d 488, 496:

> " '*It is obvious that when a statute prescribes certain steps as conditions to the enactment of an ordinance these steps must be substantially complied with* * * *.'*" (77 Ill. App. 3d 744, 755.)

The legislative history of special-use permits bears out the intention of the legislature to restrain the initially conceived lack of restraint on municipalities in this regard. Thus, as set out in the opinion of the first appeal of this case, following the concurring opinion of Justices Klingbeil and House in *Ward v. Village of Skokie* (1962), 26 Ill. 2d 415, the legislature amended the Illinois Municipal Code to reflect the views expressed by those justices as to the necessity of objective standards in granting special uses. Section 11—13—1.1 of the Illinois Municipal Code (Ill. Rev. Stat. 1979, ch. 24, par. 11—13—1.1) now provides in pertinent part as follows:

> "A special use shall be permitted only after a public hearing before some commission or committee designated by the corporate authorities, with prior notice thereof given in the manner as provided in Sections 11—13—6 and 11—13—7. A special use shall be permitted only upon evidence that such use meets standards established for such classification in the ordinances, and the granting of permission therefor may be subject to conditions reasonably necessary to meet such standards."

Nor are the individual wishes or opinions of the aldermen a satisfactory substitute for the required specific findings of the plan commission. Findings by the plan commission are required by the ordinance because presumably, due to the nature of their function and their experience and expertise, the members of the plan commission have a more objective and detached view of the effect of a proposed special use on the immediate neighborhood than is expected of council members, whose position is more general. We do not regard the language quoted above from this court's opinion in the first appeal as importing that a satisfactory

substitute for this more detached opinion is achieved by the councilmen reciting in unison their own personal opinions and desires on the question. Indeed, we note a paragraph of the affidavits indicates that the aldermen had in mind the wishes of the Third Street Merchants Association, who were promoting a restaurant in the area in question. While we in no way criticize the council for considering the wishes of legitimate businessmen in the area on this question, they do not take the place of the objective findings mandated by the zoning ordinance.

We do not regard the affidavits filed by the plan commission and the city council as having "cured" the substantial procedural deficiencies which preceded the granting of the special use in this case.

For the reasons stated, the judgment of the circuit court of Kane County is reversed.

Judgment reversed.

HOPF and VAN DEUSEN, JJ., concur.